# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WALTER LEE WRIGHT, #155663 | : | |
| Petitioner | : | |
| v. | : | Civil Action No. AW-05-2371 |
| RODERICK R. SOWERS, WARDEN and J. JOSEPH CURRAN, JR., THE ATTORNEY GENERAL OF THE STATE OF MARYLAND | : : | |
| Respondents | : | |

. . . . . . . . .o0o. . . . . . . . .

## MEMORANDUM

On August 30, 2005, Petitioner Walter Lee Wright, presently incarcerated at the Roxbury Correctional Institution in Hagerstown, filed the above-captioned Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  Although hard to discern from the initial pleading, Petitioner contends that Maryland Division of Correction ("DOC") personnel have improperly calculated his release date as a result of a change in the regulations affecting diminution credits that took place after he entered the DOC.  The court has reviewed the parties' submissions (Paper Nos. 1, 3, 7, 8, 9, 11 and 12), and will decide the case without requiring a hearing, in conformity with Local Rule 105.6 (D. Md. 2004).

Ordinarily, sentence and diminution credit calculation issues are issues of state law and do not give rise to a federal question. *See McCray v. Rosenblatt*, 1994 WL 320212 (4th Cir.1994) (per curiam) (unpublished); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pringle v. Beto*, 424 F.2d 515, 516 (5th Cir. 1970).  Violation of a state law which does not infringe upon a specific constitutional right is cognizable in federal habeas corpus proceedings only if it amounts to a

"fundamental defect which inherently results in a complete miscarriage of justice". *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir. 1978) (quoting *Hill v. United States*, 368 U. S. 424, 428 (1962)).

Petitioner, a repeat criminal offender, does not contest Respondents' claim, supported by exhibits, indicating that he lost 552 days credit against service of his sentences while on escape from the DOC.[1]  Paper Nos. 7 and 8.  He does not dispute Respondents' calculation that the maximum expiration date for his term of confinement within the DOC is September 26, 2016.  Further, he does not take issue with the DOC's initial determination that he would start his term with 3,850 diminution credits, including 2,081 "good conduct credits" ("GCC") from the DOC and 41 GCC credited for good behavior while at county institutions.[2]  *Id*.  Indeed, Petitioner does not contend that the DOC's later revocation of all 2,081 GCC is impermissible.[3]  His disagreement is not whether the credits were rescinded, but rather with the DOC's recent policy change that eliminated his ability to "earn back" the credits lost.

Under Division of Correction Directive ("DCD") 100-116, prisoners are able to have some or all of their revoked diminution of confinement credits restored.  On July 30, 2004, the DCD was modified to make a prisoner found to have escaped from custody ineligible for the restoration of

---

[1]  Petitioner escaped custody on November 29, 1985, and remained at liberty until his arrest on September 26, 1986, by Montgomery County police.  He subsequently was charged and convicted of two additional offenses which occurred during his period of escape.

[2]  An additional 879 "special project credits" ("SPC") and 890 "industrial credits" ("IC") awarded to Petitioner by the DOC (Paper No. 8 at 5) also are not at issue in this litigation.

[3]  While a prisoner may contest the revocation of good conduct credits based on wrongful adjustment convictions, the grounds for federal review of such claims is limited to a review as to whether he or she has been provided sufficient procedural due process under *Wolff v. McDonnell*, 418 U.S. 539 (1974), and whether his or her substantive due process rights were met in that the disciplinary hearing decision was unquestionably based upon "some evidence" submitted before the hearing officer.  *See Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445 (1985).

diminution of confinement credits.  Paper No. 7, Exhibit 3.  In essence, Petitioner seeks to mount an ex post facto challenge the reformulated DCD.

The Constitution provides that "[n]o State shall...pass any...ex post facto Law."  U.S. Const. Art. I, § 10, cl. 1.  The Supreme Court has determined that this provision prohibits legislative acts that would "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990).  In order for an ex post facto violation to occur, a statute "must apply to events occurring before its enactment."  While Respondents cite two cases from other circuits to support their argument that the 2004 changes to the DCD did not violate the ex post facto clause, they fail to provide a detailed analysis explaining how and when changes in the DCD occurred over the course of Petitioner's incarceration.  They further fail to explain how the DCD at issue here differs from the legislative changes at issue in *California Dep't of Corrections v. Morales*, 514 U.S. 499 (1995), *Weaver v. Graham*, 450 U.S. 24 (1981), and other potentially significant decisions.

Accordingly, a separate Order shall be entered requiring Respondents to more fully address the ex post facto allegation raised in the Petition and herein, and permitting Petitioner an opportunity for further response related to the supplemental answer.

  November 9, 2005                                               /s/                              
Date                                                      Alexander Williams, Jr.
                                                          United States District Judge

-3-